Andrea L. Calvaruso
Michael C. Lynch
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
Phone (212) 808-7800
Fax (212) 808-7897
*Attorneys for Plaintiffs IMG Worldwide, LLC*
*and International Merchandising Company, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IMG WORLDWIDE, LLC and INTERNATIONAL MERCHANDISING COMPANY, LLC,** | |
| **Plaintiffs,** | Civil Action No.: 19-cv-11225 (RA) |
| **v.** | **AMENDED COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| **FASHION WEEK INC. and TRISHA PARAVAS a/k/a PATRICIA PARAVAS a/k/a TRISHA PRASAD a/k/a DEEPIKA PARAVASTHU,** | |
| **Defendants.** | |

Plaintiffs IMG Worldwide, LLC and International Merchandising Company, LLC ("IMG" or "Plaintiffs"), by their attorneys, Kelley Drye & Warren LLP, bring this action against defendants Fashion Week Inc. ("FWI") and Trisha Paravas a/k/a Patricia Paravas a/k/a Trisha Prasad a/k/a Deepika Paravasthu ("Paravas") (collectively, "Defendants"), and allege as follows:

## NATURE OF THE ACTION

1.      Since purchasing the rights from the Council of Fashion Designers of America ("CFDA") and its related company in 2001, IMG and its predecessors in interest have promoted, produced and organized fashion shows and related events showcasing U.S. fashion designers

1

known to the trade, public and media as NEW YORK FASHION WEEK or NYFW.

2.    The CFDA continues to organize the NEW YORK FASHION WEEK events calendar and provide other related services and events to the trade.

3.    Over the last several years, Defendants have engaged in a relentless and escalating campaign with the intention of cashing in on the decades of goodwill and publicity related to the NYFW and NEW YORK FASHION WEEK events that it has never had anything to do with.

4.    First, Defendants began using the phrase "New York Fashion Week" on the FWI website to sell tickets to events in a manner designed to create a false association with the famous NEW YORK FASHION WEEK events produced by IMG.  Despite agreeing to stop this confusing conduct at IMG's request in August 2015,[1] and unbeknownst to IMG, Defendants improperly filed five trademark applications for marks that mimic the NEW YORK FASHION WEEK and NYFW marks in the U.S. Patent and Trademark Office ("USPTO") between October 2015 and January 2016.

5.    Next, Defendants attempted to leverage their improper trademark filings by commencing a lawsuit in this Court in June 2016, seeking monetary damages and a Temporary Restraining Order enjoining IMG and the CFDA from continuing to use the NEW YORK FASHION WEEK marks they had used and been associated with for decades.

6.    This Court flatly denied FWI's TRO and Motion for a Preliminary Injunction, finding that "it is clear that the public strongly associates 'New York Fashion Week' with the

---

[1] When IMG first learned of Defendants' activities, FWI owned one U.S. Trademark Registration for NEW YORK FASHION WEEK for ticket agency services on the Supplemental Register, which at the time was the subject of a cancellation proceeding by the Council of Fashion Designers of America ("CFDA").

events organized by CFDA and produced by WME-IMG."

7.      FWI thereafter unilaterally dismissed its lawsuit, but Defendants were undeterred in their efforts to improperly trade on the goodwill associated with IMG's trademarks.  In the seven months following this Court's denial of FWI's Motion for a Preliminary Injunction, Defendants filed *twelve* additional applications to register trademarks that mimic the NYFW and NEW YORK FASHION WEEK marks for a variety of goods and services.  Upon information and belief, Defendants had no good-faith use of or intention to use these marks and filed them with an improper intent to "sell" them to IMG or one of its competitors and/or create a false association between FWI's goods and the famous NYFW events.

8.      IMG initiated proceedings in the USPTO objecting to FWI's registration of these trademarks.

9.      Despite the pendency of the USPTO proceedings, and with full knowledge of IMG's prior rights in the marks, Defendants have recently commenced use of the infringing marks to sell certain of FWI's products, including for the promotion and organization of fashion shows held in February 2019 and September 2019.

10.     Since June 2019, the USPTO proceedings were suspended in connection with settlement discussions between IMG and Defendants.  Despite IMG's best efforts, the parties were not able to reach an amicable settlement.

11.     Because IMG cannot enjoin Defendants' use of the infringing marks via the pending TTAB Proceeding, IMG must now bring this action to protect its valuable rights, and to prevent consumer deception and confusion.

## THE PARTIES

12.     Plaintiff IMG Worldwide, LLC is a limited liability company, organized under

the laws of Delaware, with a principal place of business at 11 Madison Avenue, New York, New York 10010.

13.    Plaintiff International Merchandising Company, LLC, successor in interest to International Merchandising Corporation, is a limited liability company, organized under the laws of Ohio, with a principal place of business at 11 Madison Avenue, New York, New York 10010.

14.    WME IMG, LLC is the parent company of both IMG Worldwide, LLC and International Merchandising Company, LLC.

15.    IMG is a global leader in fashion, entertainment, media, and sports, and serves as a leading producer, marketer and partner to the fashion community worldwide.  Its various properties include industry fashion weeks, governing association partnerships, designer discovery platforms, modeling representation organizations, and consumer-focused festivals.

16.    Upon information and belief, Defendant FWI is a corporation organized and existing under the laws of New York with a principal place of business at 1501 Broadway, Floor 12, Suite 12039, New York, New York 10036.

17.    Upon information and belief, Defendant Paravas is an individual who resides in New York, New York, and who is the Chief Executive Officer and sole officer of FWI.  Upon further information and belief, Paravas is the sole employee of FWI.

18.    Upon information and belief, Paravas has also been known by the aliases Patricia Paravas, Trisha Prasad, and Deepika Paravasthu.

19.    Upon information and belief, Paravas is the moving, active and conscious force behind FWI and its unlawful and infringing activity alleged herein.  Paravas has sole decision-making authority and control over FWI and is the sole person with authority to decide every

aspect of the business and operations of FWI.

20.     In prior filings made with this Court, Paravas admits that she is the founder, CEO and owner of FWI.  Paravas further admits that she is responsible for the control, management, and operation of FWI, and that she directly authorizes and approves the activities of FWI, including those that form the basis of Plaintiffs' claims in this action.

21.     Upon information and belief, Paravas has sole decision-making authority and is intricately involved in the fashion shows produced by FWI.  In particular, based upon her prior declarations filed with this Court and upon further information and belief, Paravas has the following personal control and direct involvement in the fashion shows produced by FWI:

    a.    Paravas allegedly conceived of the idea to produce "consumer-based fashion shows" and used her personal funds to market test the idea through her prior company Roche Solutions Incorporated, predecessor in interest to FWI.

    b.    Paravas allegedly directs the concept and feel of the fashion shows produced by FWI.

    c.    Paravas allegedly raises the money to produce each fashion show produced by FWI and has sole decision-making authority regarding each show's budget.

    d.    Paravas allegedly scouts and negotiates with fashion designers for each fashion show produced by FWI.

    e.    Paravas allegedly uses her own personal contacts to find sponsors and vendors for the fashion shows produced by FWI.

22.     Upon further information and belief, Paravas was the driving force behind the trademark applications filed by FWI.  In particular, Paravas chose the marks that FWI would apply for, alleges that she personally searched trademarks prior to the filing of any applications,

and signed all trademark applications filed with the USPTO.

23.    In FWI's Rule 26 Initial Disclosures served in this action, Paravas is the only individual named likely to have discoverable information regarding: the events alleged in the claims and defenses in this action; FWI's adoption, promotion and use of the Disputed Marks (as defined below); FWI's promotion and production of fashion events; FWI's existing or contemplated business relationships; and FWI's future plans and intended use of the Disputed Marks.

24.    In FWI's responses to Plaintiffs' First Set of Interrogatories served in this action, Paravas is the only individual identified as employed by FWI.  Paravas is identified as the person with knowledge and information regarding, among other things: the selection, adoption and design of the Disputed Marks; the first use and use in commerce of the Dispute Marks; past, present and contemplated marketing, promotion, distribution and sale of goods and services bearing the Disputed Marks; and FWI's agreements with third parties concerning the Disputed Marks.

25.    Upon information and belief, Paravas has sole authority over business and litigation decisions and strategies concerning FWI, including the selection and retention of legal counsel, the direction of legal strategy, and the settlement of any legal or business dispute.

## JURISDICTION AND VENUE

26.    Plaintiffs bring this action under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act"), and the laws of the State of New York, against Defendants for, *inter alia* trademark infringement, trademark dilution, unfair competition, and unfair and deceptive acts and practices.

27.    This Court has jurisdiction over the subject matter of this action pursuant to

Section 39 of the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338, because this is an action for trademark infringement.  This Court has supplemental jurisdiction over causes of action arising under the laws of the State of New York pursuant to 28 U.S.C. § 1367(a).

28.     Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants reside in this judicial District, and because a substantial portion of the activity of which Plaintiffs complain took place in this District.

29.     This Court has personal jurisdiction over Defendants, as Defendants are located in New York and have engaged in infringing or otherwise unlawful conduct, or otherwise transacted business, in the State of New York.

## COMMON FACTUAL ALLEGATIONS

**A.  New York Fashion Week**

30.     For the past several decades, a series of fashion shows and events, organized and produced on a bi-annual basis in New York City to showcase and promote the work of United States fashion designers, have been known to the public and the trade as NEW YORK FASHION WEEK or NYFW (the "Events").

31.     The CFDA is a trade association for womenswear, menswear, jewelry and accessory fashion designers in the United States of America.  From at least as early as 1993 until 2001, CFDA and its related companies, including Seventh on Sixth, Inc., organized the Events.

32.     In 2001, IMG acquired substantially all of the rights and assets in and to the business of owning, operating and staging a series of fashion shows held during the Events (the "Business") from CFDA (and its related company Seventh on Sixth, Inc.), including all rights, title and interests the CFDA companies owned in and to all of the businesses, franchises, rights, privileges, properties and assets of the Business as of the date of the purchase, including but not

limited to all intellectual property related to the Business.

33.    Thereafter, the trademarks NEW YORK FASHION WEEK and NYFW, and related marks, have been associated and used in connection with activities, products, and services related to the production, organization, promotion and sponsorship of fashion shows held during the Events (collectively, "IMG Products").

34.    In or about April 2015, IMG commenced use of a new NYFW logo and the formative mark NYFW THE SHOWS and NEW YORK FASHION WEEK THE SHOWS in connection with the promotion and production of the IMG Products, including the distinctive new logos :  .

35.    Thereafter, IMG also commenced use of additional NYFW marks in connection with the IMG Products including NYFW: THE EXPERIENCE and NYFW: FIRST STAGE. The marks described in paragraphs 33 through 35 are collectively referred to herein as the "IMG NYFW Marks" unless otherwise specifically designated.

36.    As a result of its purchase of rights from the CFDA and its related company, IMG's subsequent use of the IMG NYFW Marks, and IMG's promotion, organization and production of the events associated by the public as NYFW or NEW YORK FASHION WEEK for many years, IMG owns all rights, title, and interests in and to the IMG NYFW Marks in connection with the IMG Products.

37.    Since 2001, pursuant to its agreement with IMG, CFDA has concurrently used the trademarks NEW YORK FASHION WEEK and NYFW, and certain distinguishing logos, in connection with organizing the calendar for the Events and other related trade association events

and services related to the Events.

38.    For nearly two decades, and well before the acts of Defendants complained of herein, the marks NYFW and NEW YORK FASHION WEEK (and formatives thereof) have been associated with IMG and the IMG Products by the public at large, the trade, and the media.

39.    IMG operates consumer-facing NYFW domain and social media handles that associate the IMG NYFW Marks with IMG and identify the IMG Products.  The NYFW website located at http://www.nyfw.com (the "Official NYFW Website") and associated mobile app, as well as related social media sites on Twitter (http://www.twitter.com/nyfw), Facebook (https://www.facebook.com/nyfw) and Instagram (http://www.instagram.com/nyfw), all showcase personalities, news and events relating to the IMG Products.  Consumers seek out the Official NYFW Website and IMG's mobile app and social media sites for trustworthy entertainment, modeling, and fashion information and services related to the IMG Products.

40.    IMG's Official NYFW Website promotes the IMG NYFW events and details about the various shows:



41.    The IMG Products, including the events organized and produced by IMG, receive substantial unsolicited media coverage, which refer to the events as NEW YORK FASHION

WEEK, NYFW, and/or NYFW THE SHOWS.

42.    IMG spends a substantial amount of resources producing and promoting the IMG Products that are branded with the IMG NYFW Marks, including the fashion shows and related events.  IMG also secures corporate sponsorships for its NYFW events with companies that promote and sell a wide variety of goods and services, and which are valued in the millions of dollars.

43.    IMG and its sponsors widely use the IMG NYFW Marks to advertise and promote the IMG Products and its sponsors' products throughout the United States, by all means and types of media.

44.    One such sponsor, the cosmetics company Maybelline New York, has been an official cosmetics sponsor for IMG's NEW YORK FASHION WEEK events.  In connection with its sponsorship, IMG granted Maybelline a license to use the design mark



to promote and sell cosmetics (hereinafter the "NYFW Cosmetics Logo").

45.    Other corporate sponsors for IMG's NYFW branded events that have been granted the license to use the IMG NYFW Marks in connection with the promotion of their vast array of products and services have included Lexus, Visa, Etihad Airways, E! television network, TRESemmé, Papyrus, Getty Images and Evian, to name only a few.

46.    As a result of IMG's continuous and substantially exclusive use of the IMG NYFW Marks as described herein, and the expenditure of millions of dollars in the promotion, advertising, and sale of the IMG Products associated therewith by both IMG and its licensed

sponsors, the consuming public has come to recognize and associate the IMG NYFW Marks as indicators of source for the renowned fashion shows and related IMG Products.

47.     As a result of long-standing use and extensive promotion of the IMG NYFW Marks by IMG and the use of the NEW YORK FASHION WEEK and NYFW marks by its predecessors in interest, the NYFW and NEW YORK FASHION WEEK marks have become famous and are associated with IMG and/or IMG's Products by the consuming public, signifying goods and services of the highest quality.

48.     Due to IMG's substantial investment of time, money, and effort in the promotion of the IMG NYFW Marks and the IMG Products, significant positive reputation and goodwill has accrued to IMG.

## DEFENDANTS' INFRINGING CONDUCT

### A. Defendants Commence a Scheme to Falsely Associate FWI With the Famous NEW YORK FASHION WEEK Events

49.     In November 2013, decades after IMG and its predecessors in interest commenced use of, and became associated with, the NEW YORK FASHION WEEK and NYFW marks by the public, FWI filed an application to register the mark NEW YORK FASHION WEEK with the USPTO based upon an allegation that it used the mark in U.S. commerce as early as October 4, 2013 in connection with "on-line entertainment ticket agency services."  Paravas, under her alias Deepika Paravasthu, on behalf of FWI, falsely certified that, to the best of her knowledge, no other entity had the right to use the applied-for mark in commerce.

50.     Upon information and belief, Defendants filed this application with actual knowledge of the famous NEW YORK FASHION WEEK events owned by IMG and its

predecessors in interest, in a blatant attempt to trade off of the established prestige and renown of such famous fashion events with respect to which Defendants knew they had no right or association.[2]

51.    In a prior declaration filed with this Court, Paravas, the owner and sole principal of FWI, admitted that NEW YORK FASHION WEEK was used in connection with fashion events taking place bi-annually in New York City since well before FWI alleges to have first adopted and used the NEW YORK FASHION WEEK mark.

52.    Paravas further admitted in her prior declarations under oath that FWI did not even purport to use the mark NEW YORK FASHION WEEK in U.S. commerce as a brand identifier for its ticket agency services (or any goods or services) until, at the earliest, March 2016.  FWI thereafter used the NEW YORK FASHION WEEK mark on a website that purported to offer tickets to fashion events scheduled to directly coincide with the NEW YORK FASHION WEEK Events scheduled by CFDA and produced by IMG, in an obvious effort to create a false association in the minds of consumers.

53.    Indeed, over the last several years, Defendants have monitored IMG's New York Fashion Week branding announcements, so that FWI could file trademark applications and other filings that mirror IMG's NYFW Marks and logos.

54.    For example, in January 2015, IMG announced that it would be using updated logos and platforms in connection with its NEW YORK FASHION WEEK events.  This

---

[2] On July 29, 2014, based upon Paravas's knowingly false representations, the USPTO issued FWI a registration on the Supplemental Trademark Register for the mark NEW YORK FASHION WEEK in connection with "on-line entertainment ticket agency services" (Supp. Reg. No. 4577822).

announcement received a substantial amount of attention in the fashion industry and media at large.

55. Thereafter, also in January 2015, FWI registered the domain name newyork-fashionweek.com (the "FWI Website").

56. In a press release dated April 13, 2015, IMG announced that its NYFW shows would be moving to new venues and invited readers to "visit NYFW.com and follow @NYFW on social platforms" for the latest information regarding NEW YORK FASHION WEEK events.

57. Less than one month later, FWI filed a trademark application with the USPTO seeking to register the mark NYFW. Paravas, under her alias Deepika Paravasthu, signed the application on behalf of FWI claiming FWI was using NYFW in commerce in connection with "on-line entertainment ticket agency services" and that it had done so since as early as October 4, 2013, and falsely certified under oath that to the best of her knowledge, no other entity had the right to use the applied-for mark in commerce.[3] Upon information and belief, FWI had not made *bona fide* use of NYFW in commerce on the alleged date of first use or as of the filing date of the application with the USPTO. Defendants also had actual knowledge of IMG's prior rights in the IMG NYFW Marks, including NYFW, for the same or related goods and services at the time FWI filed this application.

**B. IMG's Discovery of Defendants' Conduct and FWI's Additional Trademark Filings**

58. In August 2015, IMG first learned that FWI was selling what purported to be tickets to IMG-sponsored NEW YORK FASHION WEEK events via the FWI Website located

---

[3] Based upon Paravas's false representations, the USPTO issued a registration to FWI for the mark NYFW mark in connection with "on-line entertainment ticket agency services" on December 15, 2015 (Reg. No. 4,870,711).

at newyork-fashionweek.com in a manner intentionally designed to and actually causing consumers to falsely believe that they were purchasing tickets to IMG's events.

59.    On August 12, 2015, IMG's counsel sent FWI a letter requesting that FWI stop its use of misleading language likely to cause consumers to make a false association between FWI and IMG's NEW YORK FASHION WEEK events.

60.    In response, FWI's founder and sole principal, Defendant Paravas, offered to sell its "trademarks" and "rights," and "transfer sponsors," to IMG in exchange for payment.  She also threatened litigation, delay, and bad press if IMG did not acquiesce to FWI's demands.

61.    After IMG declined Defendants' attempt to traffic in trademarks for profit, Paravas called IMG's counsel in September 2015 to indicate that she would cooperate with IMG's requests and remove misleading language from the FWI Website.

62.    In the next four months, despite actual knowledge of IMG's rights, and unbeknownst to IMG, FWI filed four trademark applications with the USPTO for marks that are identical or confusingly similar to the IMG NYFW Marks, for goods and services that are the same or related to the IMG Products.  Upon information and belief, FWI made these filings with no *bona fide* intention to use the marks in commerce, but rather with the bad-faith intent to later sell the registrations to IMG or a competitor.

63.    In September 2015, IMG held its NEW YORK FASHION WEEK events, which featured its NYFW marks, including the new NYFW THE SHOWS logo.  IMG and its licensed sponsors spent substantial resources in connection with the production and promotion of these events and the IMG Products, as it had done for every prior NEW YORK FASHION WEEK event for at least a decade.

64.     Approximately one month later, in October 2015, FWI filed applications to register the marks NYFW THE RUNWAY SHOWS and NEW YORK FASHION WEEK THE RUNWAY SHOWS.  Paravas signed the applications on behalf of FWI claiming FWI was using the marks in connection with "on-line entertainment ticket agency services" since October 30, 2013 and October 4, 2013 respectively, and falsely certified that, to the best of her knowledge, no other entity had the right to use the applied-for marks in commerce either in identical form or in such resemblance as to be likely to cause confusion, mistake, or deception.  Upon information and belief, FWI had not made *bona fide* use of NYFW THE RUNWAY SHOWS or NEW YORK FASHION WEEK THE RUNWAY SHOWS in commerce on the alleged date of first use or as of the filing date of the applications with the USPTO.  In addition, Defendants had actual knowledge of IMG's prior rights in the IMG NYFW Marks for the same or related goods and services at the time FWI filed these applications.[4]

65.     On January 21, 2016, FWI filed applications to register the marks NEW YORK FASHION WEEK (App. Serial No. 86882687) and NYFW (App. Ser. No. 86882692).  Paravas signed the applications on behalf of FWI claiming FWI was using the marks in commerce in connection with "entertainment in the nature of fashion shows; organization of fashion shows for entertainment purposes" at the time of the filings and since at least October 4, 2013, and falsely certified that to the best of her knowledge, no other entity had the right to use the applied-for mark in commerce.  Upon information and belief, FWI had not made *bona fide* use of NEW YORK FASHION WEEK in commerce on the alleged date of first use or as of the filing date of

---

[4] Based upon Paravas's false representations, the USPTO issued FWI a registration for the mark NYFW THE RUNWAY SHOWS on the Supplemental Register on May 24, 2016 (Supp. Reg. No. 4966630), and for NEW YORK FASHION WEEK THE RUNWAY SHOWS on the Supplemental Register on May 16, 2017 (Supp. Reg. No. 5206534).

the application with the USPTO.  Further, Defendants had actual knowledge of IMG's prior

rights in the IMG NYFW Marks for the same or related goods and services at the time FWI filed

these applications.[5]

66.    Upon information and belief, despite Paravas's representations to the USPTO,

FWI did not make a *bona fide* use in commerce of any NEW YORK FASHION WEEK or

NYFW formative marks to brand its goods or services in the years 2013-2018.

**C. Defendants' Failed Attempts to Enjoin IMG and CFDA From Use of the NYFW and NEW YORK FASHION WEEK Marks**

67.    On April 19, 2016, eight months after IMG put Defendants on notice of its rights

in the IMG NYFW Marks, FWI sent a cease and desist letter to IMG.  The letter demanded that

IMG cease use of the NEW YORK FASHION WEEK and NYFW marks and account to FWI

with respect to IMG's profits in connection with the use of such marks, on the false assertion that

FWI had superior trademark rights based upon its trademark office filings.  A second letter with

similar demands regarding the NYFW THE SHOWS mark followed on June 13, 2016.

68.    On June 29, 2016, FWI filed a lawsuit against IMG's parent company, WME

IMG, LLC[6] and the CFDA in this Court together with a Motion for a Temporary Restraining

Order and Preliminary Injunction, in an attempt to stop IMG and CFDA from continuing to use

the NYFW and NEW YORK FASHION WEEK marks they had used for decades in connection

with the famous NEW YORK FASHION WEEK Events.  *See Fashion Week Inc. v. Council of

Fashion Designers of America, Inc., CFDA Foundation, Inc., and WME IMG, LLC*, No. 16-cv-

5079 (filed S.D.N.Y. June 29, 2016).

---

[5] App. Serial No. 86882687 was abandoned by FWI on February 5, 2018.  Based upon Paravas's false representations, the USPTO issued FWI a registration for the NYFW mark on the Supplemental Register on August 2, 2016 (Supp. Reg. No. 5014908).

[6] WME IMG, LLC was improperly named in the Complaint as "WEM IMG LLC."

69.     The alleged basis of the lawsuit was FWI's false claim that it owned superior rights in the marks by virtue of its prior USPTO filings for the marks NEW YORK FASHION WEEK (Supp. Reg. No. 4577822), NYFW (Reg. No. 4870711), and NYFW THE RUNWAY SHOWS (Supp. Reg. No. 4966630).

70.     On June 29, 2016 and August 12, 2016, respectively, the Court denied FWI's Motion for a Temporary Restraining Order and Motion for a Preliminary Injunction in their entirety.  In its decision denying FWI's Motion for a Preliminary Injunction, the Court opined that "defendants make a persuasive argument that the terms 'New York Fashion Week' and NYFW have been associated with them and not with the plaintiff [FWI] who has attempted to cash in on the decades of publicity for New York Fashion Week that plaintiff had nothing to do with."  *See Fashion Week Inc. v. Council of Fashion Designers of America, Inc., CFDA Foundation, Inc., and WME IMG, LLC*, No. 16-c-v-5079, Dkt. 39 at 22 (S.D.N.Y. Aug. 12, 2016).

71.     Judge Koeltl's decision denying FWI's Motion for a Preliminary Injunction noted the following based upon the evidence in the record in the case:

a.   "In the press and the fashion industry, the [CFDA/WME-IMG events] were widely referred to as "New York Fashion Week" from at least 1993 onwards." DE 39 at 3;

b.   FWI had knowledge of IMG's rebranding of its events to prominently feature NYFW and NEW YORK FASHION WEEK since at least August 2015, and perhaps as early as January 2015. *Id.* at 10-11;

c.   Email communications directed to FWI requesting to purchase tickets to the fashion events produced by IMG indicate it was likely that consumers "faced with

17

an advertisement for tickets to 'New York Fashion Week' [ ] associated that term

with [IMG/CFDA]" and not FWI. *Id.* at 20 n.2;

d. "There is no persuasive evidence that the purchasing public associated the

plaintiff, which runs one consumer-oriented fashion show on one day during the

series of events that constitute New York Fashion Week, with the organizer of

New York Fashion Week [CFDA] or with the organization that actually puts on

the shows that make up New York Fashion Week [IMG]." *Id.* at 21;

e. FWI's "registration for NEW YORK FASHION WEEK in July 2014 was only on

the Supplemental Register and came long after the term was generally associated

with [IMG/CFDA]." *Id.* at 22;

f. "FWI filed its application for the NYFW trademark *after* WME-IMG announced

it would be using NYFW on its website and invited readers to the new

NYFW.com website." *Id.* at 22-23 (emphasis in original);

g. "Similarly, FWI filed an application for NYFW THE RUNWAY SHOWS after

WME-IMG used the mark NYFW: THE SHOWS." *Id.* at 23;

h. "Based on the extensive evidence in the form of affidavits of industry

professionals, media coverage, and [FWI's] own evidence of alleged confusion in

the marketplace showing the strong association between the marks and

[IMG/CFDA] it is clear that the public strongly associates 'New York Fashion

Week' with the events organized by CFDA and produced by WME-IMG." *Id.*

72. After the Court denied its Motion for Preliminary Injunction and Temporary

Restraining Order, FWI voluntarily dismissed its lawsuit on August 30, 2016.

18

### D. Defendants' Continued Campaign to "Cash In" on the Famous IMG NYFW Marks After FWI's Failed Litigation Ploy

73.     Undeterred by the findings of this Court, Defendants pressed on with their campaign to file trademarks that mimicked the IMG NYFW Marks.  Between December 2016 and June 2017, FWI filed *twelve* additional trademark applications based on a purported use or intent to use marks identical or similar to the IMG NYFW Marks in connection with a variety of different goods and services that are the same or related to the IMG Products and those of its sponsors that license the rights to use the IMG NYFW Marks to promote their products.[7]

74.     At the time FWI filed these applications, Defendants had actual knowledge of IMG's prior use of the IMG NYFW Marks for the same or related goods and services.

   *i.    December 2016 Filings For Apparel*

75.     On December 9, 2016, FWI filed an application with the USPTO to register the mark NYFW.  Paravas signed the application on behalf of FWI claiming a *bona fide* intent to use the mark in connection with "coats; footwear; hats; headwear; jackets and socks; pants; shirts; shorts; sweaters; sweatshirts" and falsely certified that to the best of her knowledge, no other entity had the right to use the applied-for mark in commerce either in identical form or in such resemblance as to be likely to cause confusion, mistake, or deception.  On July 24, 2017, FWI filed a Statement of Use with the USPTO alleging that FWI was using the mark in commerce and first used the mark in commerce in connection with the claimed goods on February 9, 2017. Upon information and belief, at the time FWI filed a Statement of Use with the USPTO in connection with this mark, FWI did not have *bona fide* use in commerce of the mark for the

---

[7] All but one of these twelve applications were filed on the basis of a purported intent to use the mark pursuant to Section 1(b) of the Trademark Act, meaning FWI had not commenced use of the applied for mark in commerce as of the date of the application.

goods cited in the application.  Based upon Defendants' false representations, the USPTO issued

FWI a registration for this mark on October 3, 2017 (Reg. No. 5,303,409).

76.    On December 9, 2016, FWI also filed an application with the USPTO to register

the mark NEW YORK FASHION WEEK.  Paravas signed the application on behalf of FWI

claiming a *bona fide* intent to use the mark in connection with "coats; footwear; hats; headwear;

jackets and socks; pants; shirts; shorts; sweaters; sweatshirts" and falsely certified that to the best

of her knowledge, no other entity had the right to use the applied-for mark in commerce either in

identical form or in such resemblance as to be likely to cause confusion, mistake, or deception

(App. Serial No. 87263685).  Upon information and belief, at the time FWI filed this application

with the USPTO, FWI did not have a *bona fide* intent to use the mark in commerce in connection

with the claimed goods.  This application was abandoned October 30, 2017, and therefore never

matured to registration.

      ii.    *June 2017 Filings for Cosmetics*

77.    Just three months after IMG filed an application with the USPTO to register the

NYFW Cosmetics Logo in connection with "mascara and eyeliner" (App. Serial No. 87378134),

FWI filed two trademark applications to register IMG's NYFW and NEW YORK FASHION

WEEK marks in connection with cosmetics.

78.    On June 22, 2017, FWI filed applications with the USPTO to register the marks

NYFW (App. Serial No. 87501563) and NEW YORK FASHION WEEK (App. Serial No.

87501560).  Paravas signed the applications on behalf of FWI claiming a *bona fide* intent to use

the marks in connection with "cosmetics; make-up; non-medicated skin care preparations," and

falsely certified that to the best of her knowledge, no other entity had the right to use the applied-

for marks in commerce either in identical form or in such resemblance as to be likely to cause

confusion, mistake, or deception.  Upon information and belief, at the time FWI filed this application with the USPTO, FWI did not have a *bona fide* intent to use the mark in commerce in connection with the claimed goods.

79.    FWI's applications for the NYFW and NEW YORK FASHION WEEK marks for cosmetics have been suspended by the USPTO on account of a likelihood of confusion with IMG's prior pending application for the NYFW Cosmetics Logo (App. Serial No. 87378134).

    *iii.    June 2017 Filings For Various Additional Goods and Services*

80.    In June 2017, FWI filed an additional *five* additional applications with the USPTO for the mark NYFW, and *three* additional applications for the mark NEW YORK FASHION WEEK for goods and services, including retail stores, jewelry, bags, bedding and printed materials.

81.    On June 6, 2017, FWI filed an application to register the mark NYFW.  Paravas signed the application on behalf of FWI claiming FWI was using the mark in commerce in connection with "on-line retail store services featuring clothing; on-line retail store services featuring t-shirts" since February 7, 2017, and falsely certified that, to the best of her knowledge, no other entity had the right to use the applied-for mark in commerce either in identical form or in such resemblance as to be likely to cause confusion, mistake, or deception.  Upon information and belief, FWI did not have *bona fide* use of NYFW in commerce on the alleged date of first use or as of the filing date of the application with the USPTO, and Defendants had actual knowledge of IMG's prior rights in the IMG NYFW Marks.

82.    On the same date, FWI filed *seven* additional intent-to-use applications with the USPTO.  Paravas, on behalf of FWI, falsely certified in each of the applications referenced in Table 1 below that to the best of her knowledge, no other entity had the right to use the applied-

for mark in commerce either in identical form or in such resemblance as to be likely to cause confusion, mistake, or deception, and alleged that FWI had a *bona fide* intent to use the marks in commerce in connection with the goods and services claimed in the respective applications. Upon information and belief, FWI's applications for the marks referenced in Table 1 below are predicated on Paravas's false statements of FWI's *bona fide* intention to use the applied-for marks in connection with the goods claimed in the applications, as well as intentional misrepresentations regarding Defendants' knowledge of IMG's prior rights in the IMG NYFW Marks for the same or related goods and services.

83.    Unless otherwise noted, each of the applications referenced in Table 1 is presently the subject of an opposition proceeding initiated by IMG before the TTAB, as described more fully herein.

## TABLE 1:

## Seven Intent-to-Use Applications Filed by FWI on June 6, 2017

| **MARK** | **GOODS / SERVICES** |
| --- | --- |
| NYFW<br>SN: 87476580 | (Int'l Class: 18): traveling bags, leather couture hand bags |
| NYFW<br>SN: 87476575 | (Int'l Class: 14): jewelry, namely, bracelets, earrings, necklaces, rings, ankle bracelets, costume jewelry, jewelry chains |
| NYFW<br>SN: 87476564 | (Int'l Class: 24): bedding, namely, sheets, pillowcases, comforters, bedspreads, bed skirts, shams, quilts, quilted shams, shower curtains; bath towels, hand towels, wash towels, and beach towels |
| NYFW<br>SN: 87476570[8] | (Int'l Class: 16): printed materials, namely, photographs, posters, journals in the field of clothing and fashion, magazines featuring clothing and fashion, books featuring clothing and fashion, calendars, stationery |

---

[8] FWI abandoned this application on February 13, 2019.

| **MARK** | **GOODS / SERVICES** |
|---|---|
| NEW YORK FASHION WEEK SN: 87476556 Disclaimer: "NEW YORK FASHION" | (Int'l Class: 14): jewelry, namely, bracelets, earrings, necklaces, rings, ankle bracelets, costume jewelry, jewelry chains |
| NEW YORK FASHION WEEK SN: 87476561[9] | (Int'l Class: 16): printed materials, namely, photographs, posters, journals in the field of clothing and fashion, magazines featuring clothing and fashion, books featuring clothing and fashion, calendars, stationery |
| NEW YORK FASHION WEEK SN: 87476550 Disclaimer: "NEW YORK FASHION" | (Int'l Class: 24): bedding, namely, sheets, pillowcases, comforters, bedspreads, bed skirts, shams, quilts, quilted shams, shower curtains; bath towels, hand towels, wash towels, and beach towels |

84.     Each of the marks cited in preceding paragraphs 49-50, 57, 64-65, 75-76, 78, 81, and 83, together with the other marks that Defendants have used and/or applied to register with the USPTO that mimic the IMG NYW Marks, are hereinafter collectively referred to as the "Disputed Marks." At the time FWI filed each of the applications for the Disputed Marks, Defendants had actual knowledge of IMG's prior rights and use of the marks NEW YORK FASHION WEEK, NYFW, and NYFW THE SHOWS.

85.     Despite FWI's improper filings with the USPTO, IMG has a priority of rights over FWI because it (and/or its predecessors in interest) have used the marks NEW YORK FASHION WEEK, NYFW, NYFW: THE SHOWS, and related IMG NYFW Marks in U.S. commerce since long before FWI's first alleged adoption or use of any of the Disputed Marks for

---

[9] FWI abandoned this application on February 13, 2019.

any goods or services, and long before the date when FWI filed any of the applications to register Disputed Marks with the USPTO.

### E.  Presently Pending TTAB Proceedings

86.    After IMG learned that FWI continued to file additional trademark applications for the Disputed Marks with the USPTO since the dismissal of FWI's lawsuit, counsel for IMG engaged in a number of communications with Paravas on behalf of FWI in a good-faith attempt to reach an amicable resolution of the parties' dispute.  In response, FWI demanded a large, unwarranted monetary payment.

87.    On April 11, 2018, after its attempts to reach an amicable resolution failed, IMG timely filed a Notice of Opposition in the USPTO's Trademark Trial and Appeal Board (TTAB), Opposition No. 91240614 (the "TTAB Parent Case"), objecting to the registration of the six pending applications of FWI listed in Table 2 below (collectively, the "Opposed Marks") on the basis that IMG has priority of rights in and to the IMG NYFW Marks for the IMG Products that are the same or related to the goods FWI seeks to register, and that FWI's registration of the Opposed Marks is likely to result in consumer confusion and dilute the strength of the famous IMG NYFW Marks.

| Table 2: Opposed Marks<br>Six FWI Applications Opposed by IMG in TTAB Proceeding No. 91240614 | | |
|---|---|---|
| **MARK** | **DATE OF ALLEGED FIRST USE** | **GOODS / SERVICES** |
| NYFW<br>SN: 87476538 | Feb 7, 2017 | (Int'l Class: 35): on-line retail store services featuring clothing; on-line retail store services featuring t-shirts |
| NEW YORK FASHION WEEK | n/a | (Int'l Class: 14): jewelry, namely, bracelets, earrings, necklaces, rings, ankle bracelets, costume jewelry, jewelry chains |

| | Table 2: Opposed Marks<br>Six FWI Applications Opposed by IMG in TTAB Proceeding No. 91240614 | |
|---|---|---|
| **MARK** | **DATE OF ALLEGED FIRST USE** | **GOODS / SERVICES** |
| SN: 87476556<br>Disclaimer: "NEW YORK FASHION" | | |
| NYFW<br>SN: 87476580 | n/a | (Int'l Class: 18): traveling bags, leather couture hand bags |
| NYFW<br>SN: 87476575 | n/a | (Int'l Class: 14): jewelry, namely, bracelets, earrings, necklaces, rings, ankle bracelets, costume jewelry, jewelry chains |
| NEW YORK FASHION WEEK<br>SN: 87476550<br>Disclaimer: "NEW YORK FASHION" | n/a | (Int'l Class: 24): bedding, namely, sheets, pillowcases, comforters, bedspreads, bed skirts, shams, quilts, quilted shams, shower curtains; bath towels, hand towels, wash towels, and beach towels |
| NYFW<br>SN: 87476564 | n/a | (Int'l Class: 24): bedding, namely, sheets, pillowcases, comforters, bedspreads, bed skirts, shams, quilts, quilted shams, shower curtains; bath towels, hand towels, wash towels, and beach towels |

88.     On May 23, 2018, FWI filed a Notice of Opposition in the TTAB, Opposition No. 91241316 (the "TTAB Child Case"), in objection to IMG's application to register the NYFW Cosmetics Logo (App. Serial No. 87378134 (see supra ¶ 35), based upon an allegation that it had priority of rights in the mark NYFW for coats; footwear; hats; headwear; jackets and socks; pants; shirts; shorts; sweaters; sweatshirts, and its allegation that the concurrent use of the parties' respective marks was likely to result in consumer confusion that FWI and IMG's products were associated or emanated from the same source.

89.    On July 2, 2018, IMG filed its answer and counterclaims in the TTAB Child

Case, seeking cancellation of the six registrations listed in Table 3 below, for which FWI is the

record owner, on the bases that IMG has priority of use over FWI with respect to NEW YORK

FASHION WEEK, NYFW, NYFW THE SHOWS, and related marks, and that the continued

registration of FWI's identical or nearly identical marks is likely to create confusion and deceive

purchasers into believing that FWI's goods or services originate with, or are in some way

sponsored, endorsed, licensed, associated, authorized, or connected with IMG and the world-

famous NEW YORK FASHION WEEK and NYFW events.

| Table 3: Six FWI Registrations Subject to Cancellation | | | |
|---|---|---|---|
| **MARK** | **DATE OF ALLEGED FIRST USE** | **REGISTRATION DATE** | **GOODS / SERVICES** |
| NEW YORK FASHION WEEK<br>RN: 4577822<br>SN: 86118840 | October 4, 2013 | Registered Supplemental Register July 29, 2014 | (Int'l Class: 41)<br>on-line entertainment ticket agency services |
| NYFW<br>RN: 4870711<br>SN: 86627163 | October 4, 2013 | Registered December 15, 2015 | (Int'l Class: 41)<br>on-line entertainment ticket agency services |
| NEW YORK FASHION WEEK THE RUNWAY SHOWS<br>RN: 5206534<br>SN: 86787545 | October 4, 2013 | Registered Supplemental Register May 16, 2017 | (Int'l Class: 41)<br>on-line entertainment ticket agency services |

| Table 3: Six FWI Registrations Subject to Cancellation | | | |
|---|---|---|---|
| **MARK** | **DATE OF ALLEGED FIRST USE** | **REGISTRATION DATE** | **GOODS / SERVICES** |
| NYFW<br>RN: 5014908<br>SN: 86882692 | October 4, 2013 | Registered Supplemental Register August 2, 2016 | (Int'l Class: 41) entertainment in the nature of fashion shows; organization of fashion shows for entertainment purposes |
| NYFW THE RUNWAY SHOWS<br>RN: 4966630<br>SN: 86785824 | October 30, 2013 | Registered Supplemental Register May 24, 2016 | (Int'l Class: 41) on-line entertainment ticket agency services |
| NYFW<br>RN: 5303409<br>SN: 87263683 | February 9, 2017 | Registered October 3, 2017 | (Int'l Class: 25) coats; footwear; hats; headwear; jackets and socks; pants; shirts; shorts; sweaters; sweatshirts |

90.     On July 25, 2018, the TTAB granted the parties' motion to consolidate the two proceedings and maintained Opposition No. 91240614 as the "Parent Case" (hereinafter the "TTAB Proceeding").

91.     The TTAB Proceeding was suspended for motion practice on October 3, 2018. On February 25, 2019, an order was issued recommencing the TTAB Proceeding and extending all remaining deadlines.

92.     On May 13, 2019, FWI discharged its counsel in the TTAB Proceeding and on June 7, 2019, Paravas entered a notice of appearance on behalf of FWI.  Thereafter, Paravas

represented FWI in the TTAB Proceeding and had sole authority for all litigation and settlement strategy.

93.    After the TTAB Proceeding recommenced, the parties began settlement discussions, and on June 26, 2019, filed a consent motion to extend all deadlines in the TTAB Proceeding by thirty (30) days, which motion was granted on the same day.  Upon further consecutive consent motions by the parties between July 18, 2019 and November 5, 2019, the TTAB Proceeding was postponed or suspended until December 6, 2019.

94.    In discussing settlement, Paravas was the sole person with whom Plaintiffs' counsel communicated and the sole person with settlement authority for FWI.

95.    Procedurally, IMG cannot obtain an order enjoining Defendants' use of the Disputed Marks in the TTAB Proceeding.  Therefore, on December 9, 2019, IMG requested that the TTAB suspend the TTAB Proceeding pending the final disposition of this action by the Court because the final disposition of this action is likely to have a bearing on the TTAB Proceeding, and involves the same parties and the same marks as the TTAB Proceeding.  On February 10, 2020, the TTAB suspended the TTAB Proceeding pending final disposition of this action.

**F.  Defendants' Recent Infringement of the IMG NYFW Marks**

96.    In or about late 2018 and early 2019, Defendants sold tickets at various price points through the FWI Website to a Fall/Winter event held on February 8, 2019 at 6:00 pm EST, which was scheduled to coincide with the official NYFW events produced and promoted by IMG.  The event was purportedly scheduled to be held at The Gansevoort Hotel, 18 Ninth Avenue, New York, New York.  However, after purchasing their tickets, guests were informed that it would instead be held at Cipriani, 110 E 42nd Street, New York, New York.

28

97.    In or about the summer of 2019, Defendants sold tickets through the FWI Website to a Spring/Summer event purportedly scheduled to be held at The Gansevoort Hotel, 18 Ninth Avenue, New York, New York, on September 8, 2019 at 6:00 pm EST.  Again, this event was scheduled to coincide with the official NYFW events produced and promoted by IMG.  After purchasing their tickets, guests were informed that the event would instead take place at a different location, Cipriani, 110 E 42nd Street, New York, New York, and two days earlier, on September 6, 2019.

98.    The FWI Website and tickets for both events were displayed and sold in a manner likely to cause consumers to make a false association between FWI and the IMG Products that have been promoted and sold in connection with the IMG NYFW Marks.  Two screenshots from the FWI Website follow, one for each of Defendants' events:





99.    The "Level I" ticket for each event was listed at $250 on FWI's Website and purported to bestow buyers "Preferred Seating, complimentary Luxury Gift Bags valued at $200 featuring Cosmetic & Beauty Products" that included decorative stickers that utilized the IMG NYFW Marks with an ® symbol that falsely misrepresents its ownership of the mark:







100.    On February 8, 2019, Defendants produced and hosted a show for designer Sheri Hill at Cipriani, 110 E 42nd Street, New York, New York.  IMG's NYFW mark appeared in four identical external signs at Cipriani, predominantly featuring "NYFW," with the text "Fall 2019."

101.    Two illuminated signs were posted on an outer façade of the Cipriani building, to the right and left of the entranceway:



102.    Two non-illuminated signs were posted on either side of the doors in the area at the top of the front steps of the Cipriani building:



103.    On September 6, 2019, Defendants produced and hosted another show for designer Sheri Hill at Cipriani, 110 E 42nd Street, New York, New York.  Again, IMG's NYFW mark appeared in external signs at Cipriani, predominantly featuring "NYFW" and "Spring 2020":





104.    At both events, within the Cipriani building, certain individuals wore tags bearing "NYFW."  The tags included the location and details of each event in fine print and stated "Fall 2019" or "Spring 2020," respectively:





105.    Upon information and belief, Defendants have also commenced sale of t-shirts on the FWI Website which prominently display the term NYFW on the front in an ornamental fashion for the intended purpose of creating a false association with the IMG Products and the Events.

106.    Defendants have had actual notice and knowledge of IMG's prior intellectual property rights in the IMG NYFW Marks since before their adoption, use of, and/or trademark filings for, the Disputed Marks.

107.    Despite such actual notice, Defendants have continued to willfully use marks on the FWI Website and promotional materials to promote and sell products which unlawfully trade on the goodwill associated with the IMG NYFW Marks, are designed to create a false association with the IMG Products, and are likely to result in consumer confusion.

108.    Defendants' unauthorized use and/or registration of the Disputed Marks, which are the same or confusingly similar to the IMG NYFW Marks for goods or services that are the same or related to the IMG Products, is likely to confuse consumers into the false belief that FWI is somehow associated with IMG or the IMG Products that are promoted and sold in connection with the famous IMG NYFW Marks.  Defendants' conduct, despite actual notice of IMG's priority of use, constitutes bad faith on the part of Defendants.

109.    Despite actual knowledge of IMG's prior rights, Defendants have engaged in a continuous and serial pattern of applying to register marks that are the same or confusingly similar to the IMG NYFW Marks for goods or services that are the same or related to the IMG Products.  Defendants engaged in such conduct with the intention to unfairly trade on the fame and goodwill associated with the IMG Products and the NEW YORK FASHION WEEK and NYFW marks, and with the bad-faith intention to sell any resulting trademark registrations to IMG or one of IMG's competitors.

110.    Defendants have also registered domain names that are intended to mimic the IMG NYFW Marks and confuse consumers into believing that FWI and its goods and services are affiliated with the famous NEW YORK FASHION WEEK events and the IMG Products.

111.    Defendants' unauthorized use and/or registration of the Disputed Marks, which are the same or confusingly similar to the IMG NYFW Marks for goods or services that are the

same or related to the IMG Products, has harmed and will continue to seriously and irreparably harm IMG and the goodwill it has accumulated over decades.

112.    Defendants' unauthorized use and/or registration of the Disputed Marks, which are the same or confusingly similar to the famous NYFW and NEW YORK FASHION WEEK marks for goods or services that are the same or related to the IMG Products, is also likely to dilute the strength of the famous NYFW and NEW YORK FASHION WEEK marks as a source designation for the IMG Products.

113.    Defendants' conduct has already resulted in actual confusion.  For example, as this Court previously observed, FWI's mention of "New York Fashion Week" on its ticket sales website resulted in consumers emailing FWI requesting to purchase tickets to the IMG NYFW events, and caused individuals attending FWI's September 2015 event to falsely believe it would be a fashion show produced by IMG.

**FIRST CLAIM**
**Trademark Infringement**
**In Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

114.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 113, as if fully set forth herein.

115.    IMG and its predecessors in interest have made substantially exclusive use of the IMG NYFW Marks in the United States for many years in connection with the IMG Products, which use has generated substantial sales and extensive promotion and media attention.  As a result, the consuming public associates the IMG NYFW Marks exclusively with IMG (or an unidentified single source) for the IMG Products.  The IMG NYFW Marks are distinctive, valid marks entitled to protection.

36

116.    The IMG NYFW Marks serve to distinguish the IMG Products promoted, organized, sold, created, approved and/or licensed by IMG from the goods and services of others, and the goodwill associated with these marks are of inestimable value to IMG.

117.    Defendants have used and continue to use the IMG NYFW Marks and/or marks that are confusingly similar thereto in connection with the manufacture, distribution, promotion, and sale of FWI's products in interstate commerce without IMG's permission or consent.

118.    Defendants' use of the IMG NYFW Marks on and in connection with the manufacture, distribution, promotion, and sale of FWI's products in interstate commerce without IMG's permission or consent has resulted in actual confusion on the part of consumers, and is likely to continue to confuse, mislead, or deceive consumers and the public into believing that FWI's products and services have been authorized, sponsored, approved, endorsed or licensed by IMG or that FWI is in some way affiliated with IMG or the IMG Products.

119.    Defendants' conduct has already resulted in actual consumer confusion.

120.    IMG has been harmed and will continue to be irreparably harmed as a result of Defendants' willful and unlawful actions unless Defendants are permanently enjoined from their unlawful conduct.

121.    Upon information and belief, without a permanent injunction, Defendants intend to continue their willful infringement of the IMG NYFW Marks.

122.    IMG has no adequate remedy at law.

## SECOND CLAIM
### False Designation of Origin
### <u>In Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)</u>

123.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 122, as if fully set forth herein.

37

124.    Defendants' use of the Disputed Marks in connection with the manufacture, distribution, promotion, and sale of goods and services in interstate commerce that are the same or related to IMG Products, without IMG's permission or consent constitutes use of a false designation of origin, which has caused and is likely to continue to cause confusion or mistake, or to deceive the relevant purchasing public as to the origin or sponsorship of FWI's products, and result in an incorrect belief that FWI's goods and services are sponsored or otherwise approved by IMG.

125.    IMG has been harmed and will continue to be irreparably harmed as a result of Defendants' willful and unlawful actions unless Defendants are permanently enjoined from their unlawful conduct.

126.    Upon information and belief, without a permanent injunction, Defendants intend to continue their unlawful behavior.

127.    IMG has no adequate remedy at law.

**THIRD CLAIM**
**Trademark Dilution**
**Under Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c)**

128.    IMG repeats and realleges the allegations contained in paragraphs 1 through 127, as if fully set forth herein.

129.    As a result of extensive and continuous use of NEW YORK FASHION WEEK and NYFW in United States commerce by IMG and its predecessors in interest, consumers and the trade alike have come to associate the marks with IMG and its high-quality IMG Products. NEW YORK FASHION WEEK and NYFW are thus famous and distinctive within the meaning of the law.

38

130.    The NEW YORK FASHION WEEK and NYFW marks achieved this fame and distinction long before Defendants began using the Disputed Marks for related or identical goods and services, and long before the date that FWI filed applications for any of the Disputed Marks with the USPTO.

131.    Defendants' continued use of identical or substantially similar marks is likely to dilute the famous NEW YORK FASHION WEEK and NYFW marks as a source designation for the IMG Products, in violation of 15 U.S.C. 1125(c).

132.    IMG has been harmed and will continue to be irreparably harmed as a result of Defendants' unlawful actions unless Defendants are enjoined from their unlawful conduct.

133.    Upon information and belief, without a permanent injunction, Defendants will continue their unlawful conduct.

134.    IMG has no adequate remedy at law.

**FOURTH CLAIM**
**Dilution**
**In Violation of New York General Business Law § 360-1 *et seq.***

135.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 134, as if fully set forth herein.

136.    The NEW YORK FASHION WEEK and NYFW marks are distinctive and acquired distinctiveness as a matter of law prior to Defendants' use or application to register the Disputed Marks.

137.    Defendants' use of the NEW YORK FASHION WEEK, NYFW, or marks substantially similar thereto, including the Disputed Marks, harms or is likely to harm IMG's business reputation and dilutes or is likely to dilute the distinctive quality of the famous NYFW and NEW YORK FASHION WEEK marks.

39

138.    IMG has been harmed and will continue to be irreparably harmed as a result of Defendants' unlawful actions unless Defendants are permanently enjoined from their unlawful conduct.

139.    Upon information and belief, without a permanent injunction, Defendants intend to continue their unlawful conduct.

140.    IMG has no adequate remedy at law.

## FIFTH CLAIM
### Common Law Unfair Competition

141.    Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 140, as if fully set forth herein.

142.    Defendants have engaged in a campaign of filing a multitude of trademark applications with the USPTO for marks that are identical or confusingly similar to the IMG NYFW Marks, for goods and services that are the same or related to the IMG Products.  Upon information and belief, Defendants made these filings with no *bona fide* intention to use the marks in commerce, but rather with the bad-faith intent to later sell the registrations to IMG or a competitor.

143.    Defendants' unauthorized use, trademark filings and/or registration of the IMG NYFW Marks or Disputed Marks in connection with goods and services that are the same or related to the IMG Products is intended to capitalize, for Defendants' own pecuniary gain, on the goodwill and excellent reputation of IMG and the IMG Products and intellectual property, which IMG has expended substantial time, resources, and effort to obtain.

144.    Defendants have thereby unfairly competed with and are benefiting from IMG's skill, expenditures and labors with respect to intellectual property rights that rightfully belong to IMG.

145.    Defendants' activities are likely to lead to and result in consumer confusion, mistake, or deception, and are likely to cause consumers and the public to believe that IMG has produced, sponsored, authorized, licensed or otherwise approved Defendants' trademark filings and use of the Disputed Marks.

146.    Defendants conducted their unlawful actions with bad faith.

147.    IMG has been harmed and will continue to be irreparably harmed as a result of Defendants' unlawful actions unless Defendants are permanently enjoined from their unlawful conduct.

148.    Upon information and belief, without a permanent injunction Defendants intend to continue the promotion and sale of goods, services, and products that willfully infringe IMG's intellectual property rights, and to unlawfully benefit from the goodwill associated with IMG and the IMG NYFW Marks.

149.    IMG has no adequate remedy at law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants on the foregoing claims as follows:

A.    That, pursuant to 15 U.S.C. § 1116(a), Defendants, their agents, servants, employees, licensees, sponsors, associates, and attorneys, and all persons acting by, through, or in active concert with any of them, be permanently enjoined:

i.    From use of the Disputed Marks, the IMG NYFW Marks, or any

other mark confusingly similar thereto in connection with the

manufacturing, importing, advertising, marketing, promoting,

supplying, distributing, offering for sale or selling worldwide any

products or services;

ii.     From committing any other act which falsely represents or which

has the effect of falsely representing that the goods or services of

FWI are licensed, authorized by, or in any way associated with

IMG or the IMG Products;

iii.    From otherwise infringing IMG's trademarks;

iv.    From otherwise unfairly competing with IMG; and

v.    From otherwise diluting the NYFW or NEW YORK FASHION

WEEK marks;

B.     That an order issue directing FWI to file a certification under oath of compliance

with the injunction with the Court;

C.     That, pursuant to 15 U.S.C. § 1119, an order issue cancelling the registrations

obtained by FWI for the Disputed Marks or any other marks that infringe upon the rights of

IMG;

D.     That IMG be awarded its actual damages, trebled, pursuant to 15 U.S.C. §

1117(a);

E.     That Defendants account to IMG for all gains, profits and advantages derived

from their wrongful acts pursuant to 15 U.S.C. § 1117(a);

F.     That IMG recover from Defendants all of their profits and all damages, including

lost profits, sustained by IMG as a result of Defendants' wrongful acts, and such other

compensatory damages as the Court determines to be fair and appropriate, pursuant to New York

state law;

G.    That IMG be awarded any punitive or exemplary damages available under state

law;

H.    That IMG be awarded its reasonable attorneys' fees pursuant to 15 U.S.C. §

1117(a);

I.    That IMG be awarded the costs of this action pursuant to 15 U.S.C. § 1117(b);

J.    That IMG recover pre-judgment interest on any monetary award made part of the

judgment against Defendants; and

K.    Such other and further relief as this Court may deem just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs request a trial by jury on all issues so triable.


Dated: New York, New York          KELLEY DRYE & WARREN LLP
      March 30, 2020


                              By   *s/Andrea L. Calvaruso*
                              Andrea L. Calvaruso
                              Michael C. Lynch
                              101 Park Avenue
                              New York, New York 10178
                              212-808-7800
                              acalvaruso@kelleydrye.com
                              mlynch@kelleydrye.com

                              *Attorneys for Plaintiffs*
                              *IMG Worldwide, LLC and International*
                              *Merchandising Company, LLC*