*LAW OFFICES OF ERICA DORAN, ESQ.*
*42 CHURCH STREET*
*SYOSSET, NY 11791*
*TEL: (516) 263-5305*
*FAX: (516) 908-4172*
*E-mail: ericadoran@email.com*

June 16, 2020

**VIA ECF**
Honorable Ronnie Abrams
United States District Court Judge
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

By separate order, this action will be referred to Magistrate Judge Parker for general pretrial purposes. Judge Parker shall address Defendant's letter motion at her convenience.

SO ORDERED.

Hon. Ronnie Abrams
6/18/2020

Re: IMG Worldwide, LLC et al. v. Fashion Week Inc., No. 19-cv-11225

Dear Judge Abrams:

I respectfully submit this letter motion on behalf of my client, defendant Fashion Week, Inc. ("FWI"), pursuant to Fed. R. Civ. P. 45, seeking an order to compel compliance with the subpoena, dated April 15, 2020, to produce documents, information, or objects served on Optimum Online, a non-party witness to this action.

**Relevant Background**

On or about December 6, 2019, Plaintiffs IMG Worldwide, LLC ("IMG") and International Merchandising Company, LLC ("IMC")("Plaintiffs") commenced the present action against FWI. I entered my notice of appearance as counsel for FWI on February 7, 2020.

One week late, on February 14, 2020, I received an email from Andrea Calvaruso ("Ms. Calvaruso") of Kelley Drye, counsel for Plaintiffs, stating that an employee of IMG, Ryan Dye ("Mr. Dye") had received an email, dated February 14, 2020, sent at 12:49 P.M. EST ("Dye Email"), allegedly from Trisha Paravas ("Ms. Paravas"), the founder and chief executive officer order of FWI (*See* Declaration of Trisha Paravas ("Paravas Decl."), ¶¶ 1, 4, and Exhibit A,

1

Case 1:19-cv-12235-RA-HP Document 50-2 Filed 06/17/20 Page 2 of 9

attached hereto.).  The Dye Email appeared to have been sent from a Google Gmail account trishaparavas@gmail.com. (the "Fraudulent Account")(Paravas Decl. ¶ 6 and Exhibit A.).  In the Dye Email, the author wrote, *inter alia,* that "I [Trisha Paravas] planned to created the "New York Fashion Week, Inc " years ago to sue people who use it.  Sue IMG and CFDA is in my plan to earn money or at least I will get my name out there" (Paravas Decl. ¶ 5 and Exhibit A.).  Ms. Calvaruso requested that I advise Ms. Paravas to refrain from communicating with Plaintiffs' employees.

I promptly reached out to Ms. Paravas, who informed me that she did not send the Dye Email and that she is not the owner of the email account that appeared to have originated from Paravas (Decl. ¶ 7).  Moreover, Ms. Paravas immediately recognized that this email, which had clearly been created by someone to damage her reputation and/or legal position, could be used as evidence against her.  As such, she promptly sought to demonstrate that the email was not and could not have been from her.  As an initial matter, Ms. Paravas demonstrated that she could not have sent the Dye Email at that time on that date (February 14, 2020, at 12:49 P.M. EST ) as she was on the phone with her insurance provider, Geico, a fact supported by documentary evidence (Paravas Decl. ¶¶ 21-22 and Exhibits J and K.).

Moreover, Ms. Paravas noted the problematic language used in  the Dye Email. She believes that, based on the language used in the Dye Email, someone was deliberately trying to mimic her "voice." Specifically, it appears that based on his or her perception, based on Ms. Paravas's skin color and nationality alone, the author of the Dye email believed she would write in a style best described as broken English, as evidenced by the many odd linguistic errors in the Dye Email (Paravas Decl. ¶ 14.). In fact, Ms. Paravas comes from a highly educated family of professionals in India. Although born in India, where she attended prestigious and renowned

boarding schools, English is her first and only language (Paravas Decl. ¶ 14.). Ms. Paravas emigrated to the United States from India as an adolescent, after selling her successful textile business, and proceeded to earn an MBA degree here, followed by over a decade working on Wall Street in various high-level management roles (Paravas Decl. ¶ 14.). The manner in which she was portrayed in the Dye Email is inconsistent in every way with the well-educated professionalism that characterizes Ms. Paravas. Ms. Paravas's spoken and written English varies from that of a typical American and reflects the British English that is predominant in India (Paravas Decl. ¶ 15.). Her word choice tends to be more formal and stronger than is found in typical American writing, a style not reflected in the Dye Email. For example, the writer of the email included a post-script in which he or she wrote, "I filed my lawsuit to sue you guys," which has a very casual and slangy tone. Ms. Paravas does not and has never used in any of her correspondence expressions such as "you guys" (Paravas Decl. ¶ 15.). It is thus Ms. Paravas's belief that the author of the Dye Email deliberately used grammatical errors in the Dye Email under the mistaken belief that this was similar to Ms. Paravas's writing style and would convincingly sound like her.

With this issue in mind, Ms. Paravas retained the services of Dr. Lorin Basden Arnold ("Dr. Arnold"), a communication expert, to analyze the language in the Dye Email. Dr. Arnold is an academic with a background and expertise in the field of communication. Dr. Arnold analyzed and compared the Dye Email to two emails, dated December 16, 2019 and January 9, 2020, that Ms. Paravas had sent to Ms. Calvaruso, while representing herself *pro se* in prior litigation involving this same matter at the Trademark Trial and Appeal Board ("TTAB")(Paravas Decl. ¶ 16.). On February 22, 2020, Dr. Arnold submitted her report, in which she confirmed that in her opinion, the Dye email was not written by the same author as the

other two emails (Paravas Decl. ¶ 16 and Exhibit D.). For example, *inter alia,* Dr. Arnold noted that the two emails written by Ms. Paravas had a formal style, using formal phrasing for simple concepts, whereas the Dye Email uses a much more colloquial tone. Dr. Arnold also noted inconsistencies in the type and number of errors made in the Dye Email compared with the emails written by Ms. Paravas, as well as differences in the signature block used (Paravas Decl. Exhibit D).

While Dr. Arnold's report, along with the documentary evidence that Ms. Paravas was on the telephone speaking with Geico at the time the email was sent, support Ms. Paravas's contention that she did not write the Dye Email, these items do not help to identify the actual author. As stated above, the author's identity was and is very important to Ms. Paravas, as the contents of the Dye Email are defamatory and damaging, threatening not only her legal position in the present case but also her overall reputation and credibility. The Dye Email implies that Ms. Paravas created her company, FWI, solely to enable her to sue people for trademark infringement. On the contrary, over the past 10 years, Ms. Paravas has worked tirelessly to create and promote FWI, establishing a company whose hard-earned reputation in the fashion industry the Dye Email seeks to ruin (Paravas Decl, ¶ 18.). Needless to say, there are numerous civil and criminal implications arising from the Dye Email and the Fraudulent Account, but to pursue these courses of action, Ms. Paravas needs to determine the individual or individuals behind this wrongdoing It was and is particularly important to Ms. Paravas to learn the source of the Dye Email and Fraudulent Account, as it was clearly created by someone with detailed knowledge of this case, and with the aim of undermining her credibility and/or legal position in this current, ongoing litigation at the very outset of the case. Moreover, it is unclear who, beyond the Plaintiffs, could possess the knowledge and motive to engage in such outrageous

conduct (Paravas Decl. ¶¶ 11and 12.). Thus, obtaining the identity of the perpetrator was and is of utmost important to FWI's legal position and its credibility in this case.

To uncover the source of the Dye Email, Ms. Paravas started by retaining the services of cyber-crime experts (Paravas Decl. ¶ 8.). Specifically, Ms. Paravas retained the services of Bright Star Communications, a private investigation firm with an extensive background in cybercrimes and open source intelligence-based investigations. The investigator advised that, because the email in question was forwarded by Ms. Calvaruso, it did not contain the necessary header required to determine the IP address and location from which the email originated (Paravas Decl. ¶ 9 and Exhibit B.). In light of this advice, and in furtherance of the investigation into the true source of the Dye Email and Fraudulent Account, I advised Ms. Calvaruso that Defendant might in the future require access to Mr. Dye's computer and the IMG server to obtain information, and that therefore this evidence should be preserved (Paravas Decl. Exhibit C.). However, to avoid any inconvenience to Plaintiffs, Ms. Paravas has opted to first pursue other avenues in an effort to obtain the required information in order to identify the source of the Dye Email.

Specifically, to determine the true source of the Dye email and the owner of the Fraudulent Account, Ms. Paravas sought information directly from Google via subpoena (Paravas Decl. ¶ 19 and Exhibit E.). In response to this subpoena, Google provided information indicating that the Fraudulent Account had been created on February 14, 2020, the same day the Dye Email was sent, had last been logged into that same day, and was never used again by the impersonator. Google also provided the IP address associated with the Fraudulent Account (Paravas Decl. ¶ 20 and Exhibit F.).

Ms. Paravas then took this information provided by Google to various internet crime experts, who were able to determine that the Dye Email was sent, and the Fraudulent Account originated from somewhere in or around New York City or Jersey City, New Jersey, and via a computer that accessed the Internet through an account with Optimum Online, an internet service provider owned by Altice (formerly Cablevision)(Paravas Decl. ¶ 21.). This further supports Ms. Paravas's contention that she is not the source of the Dye Email or the creator of the Fraudulent Account, as during the relevant time period, she was nearly 1000 miles outside the New York City metro area (Paravas Decl. ¶¶ 22 – 23.).

Ms. Paravas then sought to obtain the identity of the creator of the Fraudulent Account and the Dye Email by subpoenaing the internet service provider, Optimum Online (Paravas Decl. ¶ 24 and Exhibit L.). She also filed a report with the FBI's Internet Crime Complaint Center regarding this fraudulent and likely criminal activity (Paravas Decl. ¶ 26 and Exhibit N.). In response to the subpoena, Optimum Online replied that under the Cable Communications Policy Act of 1984, it could not disclose the requested information absent a court order (Paravas Decl. Exhibit M.).

**Argument**

Rule 45 of the Federal Rules of Civil Procedure provides the framework for securing from non-parties, through the use of subpoenas, documents, electronically stored information, testimony and tangible things relevant to a pending litigation. Fed. R. Civ. P. 45 (a), (b). It is well settled that the scope of a Rule 45 subpoena is informed by Rule 26, which governs civil discovery generally. Rule 26(b)(1) provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense .... " Fed. R. Civ. P. 26(b)(1). The Federal Rules also provide Federal courts with the power to compel compliance with

subpoenas and disclosure requests that seek relevant information. See Fed. R. Civ. P. 45(c)(2)(B)(i); Fed. R. Civ. P. 37(a)(l).

In the present instance, the information sought from non-party Optimum Online is clearly relevant to the pending litigation. The Dye Email was created and sent by somebody seeking to undermine Ms. Paravas's defenses and counterclaims in the present litigation, and came to light in the context of the present litigation. Ms. Paravas's credibility would be diminished by this fraudulent and misleading email, evidently created with the intent to undermine Ms. Paravas's integrity and bolster Plaintiffs' case against Ms. Paravas. Moreover, depending upon the source of the Dye Email, it may give rise to additional counterclaims and/or defenses in the present litigation.

In its response to the subpoena, non-party Optimum Online does not indicate any substantive objections to disclosing the requested information, such as asserting that doing so would be unduly burdensome, but rather raises only a procedural issue; Optimum Online is prohibited by law from disclosing this information absent a court order. Section 551(c) of the Cable Communications Policy Act of 1984 provides that "a cable operator shall not disclose personally identifiable information concerning any subscriber without the prior written or electronic consent of the subscriber concerned . . ." 47 USC §551(c)(1). But such disclosure is permissible when "made pursuant to a court order authorizing such disclosure, if the subscriber is notified of such order by the person to whom the order is directed." 47 USC §551(c)(2)(B).

It is therefore necessary and appropriate that this Court issue an order compelling Optimum Online to disclose the subscriber's personally identifiable information pursuant to the

7

Cable Communications Policy Act of 1984, 47 USC §551(c)(2)(B) for the subscriber with the IP Address associated with the computer from which the Dye Email originated.

For the foregoing reasons, Defendant FWI respectfully requests that the Court grant its motion to compel Optimum Online to respond to FWI's Subpoena, providing the information to personally identify the subscriber with IPV4 Address 69.113.222.27 on February 14, 2020 at 12:49 p.m. EDT. Defendant FWI also requests that such order provide Optimum Online with at least ten (10) days to comply, affording Optimum Online time to contact the subscriber in question, as required by the Cable Communications Policy Act of 1984, 47 USC §551(c)(2)(B).

                Respectfully submitted,

                /s/ Erica Doran

                LAW OFFICES OF ERICA DORAN

                *Attorney for Defendant Fashion Week, Inc.*

cc:    All Counsel of Record (Via ECF)

       Optimum Online (Via First Class Mail and E-Mail)

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of the foregoing LETTER MOTION BY DEFENDANT FASHION WEEK INC. SEEKING AN ORDER TO COMPEL OPTIMUM ONLINE'S COMPLIANCE WITH A SUBPOENA was served on June 17, 2020 via ECF, e-mail, and U.S. First Class Mail upon the following:

<u>VIA ECF</u>:

KELLEY DRYE & WARREN LLP
Andrea L. Calvaruso
Michael C. Lynch
Taraneh Marciano
*Attorneys for Plaintiffs*

<u>VIA ECF AND E-MAIL</u>:

Trisha Paravas
*Litigant Pro Se*


<u>VIA E-MAIL AND U.S. FIRST CLASS MAIL:</u>
OPTIMUM ONLINE
c/o CSC Holdings/ YAANA Technologies
Attn: Nicholas Larry
542 Gibraltar Drive
Milpitas, CA 95035


Dated: New York, New York
      June 17, 2020

LAW OFFICE OF ERICA DORAN
By: /s/ Erica Doran
Erica Doran, Esq.

*Attorney for Defendant*
*Fashion Week, Inc.*

42 Church Street
Syosset, NY 11791
Tel: (516) 263-5305
Fax: (516) 908-4172
ericadoran@gmail.com